UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------X

MOORE NORTH AMERICA, INC.,

Plaintiff,

-against-

KATHRYN D. PETRICK,

Defendant.

------------------------------------------------------------X

Civ. No.: 02-CV-227
ADM/AJB

# ORDER

This matter came on before the undersigned after the parties were unable to finalize a settlement they reached before the undersigned on February 6, 2002. The parties now seek the assistance of the Court in resolving all outstanding disputes and finalizing the terms of their settlement.

Mark S. Mancher, Esq. of Jackson Lewis Schnitzler & Krupman, Woodbury, New York, appeared for Plaintiff Moore North America, Inc. J Jackson., Esq. of Dorsey & Whitney LLP, Minneapolis, Minnesota, appeared for Defendant Kathy D. Petrick.

Based upon all of the files, records, pleadings, and proceedings herein, and the submissions of counsel, and being duly advised in the premises,

**THE COURT FINDS THAT:**

The parties settled their dispute during a telephone conference with this Court on February 6, 2002. The terms and conditions of that settlement are set forth in the attached Settlement Agreement and Release.

FILED MAY 09 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

**AND IT IS HEREBY ORDERED THAT:**

The parties shall, individually or through an authorized representative, execute the attached Settlement Agreement and Release. The parties may execute the attached Settlement Agreement and Release in counterparts, but they shall complete their execution within ten (10) days of the date of this order.

Date: 5/9/02

Arthur J. Boylan
United States Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---------------------------------------------------------------- X

MOORE NORTH AMERICA, INC.,

Plaintiff,

-against-

KATHRYN D. PETRICK,

Defendant.

---------------------------------------------------------------- X

Civ. No.: 02-CV-227 ADM/AJB

**SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement and Release ("Agreement") is entered into by and between Moore North America, Inc. ("Moore") and Kathryn D. Petrick ("Petrick") and is shall be effective pursuant to the terms of this Agreement.

**RECITALS**

WHEREAS, Petrick began her employment with Moore on or about October 26, 1992, as a Sales Representative in Moore's Business Forms and Systems Division for the purpose of selling the products of that division;

WHEREAS, on or about October 26, 1992, Petrick executed a Sales Representative's Employment Agreement;

WHEREAS, on or about February 28, 2001, Moore terminated Petrick's employment;

WHEREAS, on or about January 22, 2002, Moore filed a lawsuit against Petrick in the United States District Court, District of Minnesota, (the "Court") seeking damages

and injunctive relief, claiming, *inter alia*, that she breached the non-solicitation and non-competition covenants of her agreement (the "Action");

WHEREAS, Petrick denies the allegations of Moore's Complaint, denies liability to Moore, and asserts, among other things, that she was not subject to any non-solicitation or non-competition covenants;

WHEREAS, without any admission by either party as to the validity of Moore's claims stated in the Action or any wrongdoing whatsoever, Petrick and Moore have mutually agreed to settle this Action;

IT IS STIPULATED AND AGREED by and between the parties as follows:

1. Restricted Period. Through and including November 28, 2002 (the "Restricted Period"), except as specified in paragraph 2, Petrick will not directly or indirectly solicit or accept business for business forms (including labels) from Medtox Laboratories, Inc. ("Medtox"). Doing business "directly or indirectly" specifically includes, but is not limited to, providing any information or assistance to, or in any way facilitating Petrick's current employer American Business Forms ("ABF") to solicit or accept business forms business from Medtox.

2. Existing Order. Petrick shall be permitted to continue to service an existing order from Medtox for pediatric lead testing requisition forms entered into on January 14, 2002. The specifications of that order are as follows: Medtox ordered 297,900 forms which are to be released monthly and manufactured quarterly (approximately 54,500 forms have been delivered to date). ("Existing Order"). Petrick's contact with Medtox with regard to the Existing Order shall be strictly limited to those duties customarily

necessary to servicing such an order. Said duties shall not include taking on site inventory unless required by business necessity and Petrick shall not directly or indirectly solicit or accept future orders for the same or other forms during the Restricted Period.

3. Return of Confidential Documents. Petrick specifically represents and warrants that she has not taken any Confidential Information or Documents, and that she has no Confidential Documents to return.

4. Dismissal of Action. Moore will file a dismissal with prejudice with the Court except that the Court and Magistrate Judge Boylan shall retain jurisdiction of this matter for the purpose of enforcing the terms of the Settlement Agreement.

5. Mutual General Release of Claims. In exchange for the above-described consideration, the sufficiency of which is hereby acknowledged, the mutual promises made pursuant to this Agreement will extinguish all claims Petrick and Moore have against one another as of the date of the execution of this Agreement as further set forth below:

(a) Petrick, as well as her heirs, assigns, executors, administrators and agents, hereby releases and discharges Moore, as well as all past, present or future parent, subsidiary, affiliated or successor entities, their respective successors, holders of assets in succession, licensees, officers, directors, principals, owners, agents, representatives, directors, partners, members, employees, contractors, shareholders, suppliers, distribution partners, attorneys, executors, administrators, agents, heirs and assigns, from any and all claims, demands, damages, actions, attorneys' fees, losses, causes of action or suits of any kind or nature known or unknown which exist to date, arising out of or relating in

any way to Petrick's employment with Moore, [except that Petrick does not release any rights she may have to pension or other vested benefits. This release of claims shall supplement the Agreement and General Release entered into by Petrick on or about March 5, 2001.

(b) Moore, as well as any past, present or future parent, subsidiary, affiliated or successor entity, holders of assets in succession, and licensees hereby releases and discharges Petrick, as well as her heirs, assigns, executors. administrators, agents and representatives from any and all claims, demands, damages, actions, attorneys' fees, losses, causes of action, and suits of any kind or nature known or unknown which exist as of the date of execution of this agreement.

(c) Patent Rights. Neither party releases or waives any rights it may have with regard to any issue relating to patents.

6. Nondisparagement.

(a) For a period of eighteen (18) months from the date of this agreement, Petrick agrees to refrain from making or issuing any statements or remarks, whether written or oral, which are either disparaging to Moore, its business, or any of its products, including, but not limited to, the products which are or have been sold by Petrick on behalf of Moore, or any statements or remarks which might incite a third party to engage in a lawsuit with Moore, or which are in any way potentially damaging to the business reputation of Moore, including that of any past, present or future parent, subsidiary, affiliated or successor entity, their respective successors, holder of assets in succession, licensees, assigns, officers, directors, principals, owners, agents,

representatives, partners, members, employees, contractors, shareholders, suppliers, distribution partners and attorneys.

(b) For a period of eighteen (18) months from the date of this agreement, Moore agrees that Dick Jacobson, Bill Deppa, Melanie Seevers shall not directly or indirectly make any disparaging, negative or critical comment regarding Petrick, her business, or any of her products, including, but not limited to, the products which are or will be sold by Petrick on behalf of ABF, or any statements or remarks which might incite a third party to engage in a lawsuit with Petrick, or which are in any way potentially damaging to the business reputation of Petrick, including that of any past, present or future affiliated or successor entity, agents, representatives, partners, members, employees, contractors, suppliers, distribution partners and attorneys. Moore will also direct other Moore officers and employees who deal with or communicate with Medtox to refrain from so disparaging Petrick. Furthermore, the Human Resources department of Moore will not provide any information about Petrick's employment to prospective employers other than to verify dates of employment and position held and will not provide salary information without a signed release or verification from Petrick, in accord with Moore's policies.

7. Severability. If any provision of this Agreement is held invalid or unenforceable, the validity, legality or enforceability of the remaining provisions shall in no way be affected or impaired thereby.

8. Choice of Law. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Minnesota.

9. Voluntary Agreement. The parties acknowledge that they have entered into this Agreement freely and voluntarily.

10. Counterparts. The parties agree that this Agreement may be executed in counterparts and that it is the intent of the parties that the copy signed by a party will be fully enforceable against said party.

MOORE NORTH AMERICA, INC.

By:______________________________

Title:____________________________

Date:____________________________

Kathryn D. Petrick

_________________________________

Date:____________________________